A U.S. v. Burnett, 1329-74. Mr. Brindley. May I please report? My name is Beau Brindley, and I represent the defendant-appellant, Rahshone Burnett. Mr. Burnett appeals from his sentences in two cases, 09CR1030, which was his narcotics case, and 11CR571, which was a fraud case. In 09CR1030, Mr. Burnett proceeded to trial, was acquitted of conspiracy, and found guilty of only two particular drug transactions. He now appeals the district court's findings regarding relevant conduct, drug quantity, and leadership at sentencing. This morning, I would like to address Mr. Burnett's argument regarding the district court's findings on relevant conduct and drug quantity in case 09CR1030. Now, it is undisputed between the parties that the actual offenses of conviction involved a quantity of heroin no greater than approximately 33.5 grams. Yet at sentencing, the district court attributed to Mr. Burnett a quantity of heroin of at least 100 grams, sometimes somewhere between 100 and 400 grams, I believe. In so doing, the court necessarily made a relevant conduct finding of some kind. However, at the same time while making this finding, the district court expressly rejected the government's drug quantity calculations and analysis with respect to quantity and relevant conduct. The district court expressly rejected the pre-sentence investigation reports, drug quantity calculations and analysis. The district court expressly indicated that it would not credit and did not credit, as I believe the jury did not, one of the cooperating witnesses, Teodos Fields, on whom the government and pre-sentence reports factual analyses relied. And the district court also did not adopt the defendant's position on quantity and relevant conduct either. Now having done all of that, the district court provided no factual findings of its own indicating which 100 grams that had been involved in the case it was referencing, nor did it make any legal findings explaining why this particular quantity was relevant conduct, was relevant to the offenses of conviction, and the other quantity that the government was alleging, which it expressly rejected, was not. And that puts this court in the impossible position of having to guess at what factual findings and legal findings the district court engaged in to pick out this particular quantity rather than others that it rejected and make a determination that that is relevant conduct. And I think this is a similar situation to what you had in Garrett when this court said we're not going to guess at the factual findings of the district court. Well, let me ask you this, and I want to make sure I have the record right. Did Burnett himself admit at trial to buying and selling over 100 grams? He admitted at trial during his testimony that he had been involved in certain transactions at various times that I think would have totaled 100 grams. That admission was made. So factually, Burnett made that statement. And the judge couldn't use that? He could certainly use it, but he has to give us some legal analysis as to why those particular transactions were relevant to these specific offenses of conviction. The district court expressly rejected the notion that Burnett's greater quantity, which was greater than 100 grams, that was supposed to be involved in some conspiracy was relevant conduct. He expressly rejected that analysis and argument made by the government and in the pre-sentence investigation court. And he selected a different quantity. He did not indicate which transactions he was talking about, so we could not really determine the accuracy or adequacy of his relevant conduct findings. We need to know which ones he's talking about. There are various witnesses talking about various transactions. Some of them were supposed to be in Springfield. Some of them involved small quantities for this guy that worked for him as a construction worker, Anthony Guerra. Some of them were supplied by Richard Harrington. Some of them were supplied by unknown persons. And in order to have relevant conduct, we need to know why the court found this particular quantity was indeed relevant and these other quantities it was rejecting were not. I think the clear rule that should come out of the case is when we have a situation like this one where the district court expressly rejects the positions of both parties and the pre-sentence investigation report and instead devises a different quantity and relevant conduct finding of its own, independent and different than what the government said, what the pre-sentence report said, what the defendant said, then the district court must tell us why. How did I come to this factual analysis to say this particular quantity is the right one? And how did I come to a legal analysis to say this particular quantity is the right one and it is indeed relevant pursuant to the sentencing guidelines? Well, wasn't this the 100 grams he admitted buying? Wasn't this from Harrington who was the same supplier and who sold it to the same people? The 100 grams, it depends on what 100 grams we're talking about. I'm talking about the 100 grams he admitted, that Burnett admitted to buying from Harrington. He admitted to buying a quantity of heroin amounting to 100 grams from Harrington at different times. But with respect to the specific offenses of convictions, there's no indication whether or not the heroin came directly from Harrington on those occasions rather than another unknown supplier. More importantly, if the court was to be taking the opinion that because it was Harrington supplying, just because it was Harrington's supplier, it should count as relevant conduct, then the quantity would have been much higher, as the government alleged, because there would have been a higher quantity from Harrington. He didn't find that for presumably some reason, and we just don't know what. Well, probably because he had the 100 grams right out of the defendant's mouth. But whether or not the defendant makes the statement that it's 100 grams doesn't mean that that 100 grams is meeting the requirements of Section 1B1.3 with respect to relevant conduct. The judge needed to tell us that and why he thought that was the case. And with respect to Mr. Burnett giving the testimony, the problem is, yes, he can testify to that, but the specifics of the transaction, how they're related to the others, have to be presented. Because if they're not, as in this case, and everybody else's position was rejected, then we don't know why he said, well, this transaction from Harrington is good and counts as relevant conduct, but others don't. If it's the case that he didn't think that anything was believable except for Mr. Burnett's statement, that's possible, but he needs to give us those factual findings. I don't think in a case where all the parties and the pre-sentence report are rejected, which is unlike all the government-cited cases, we can be in a position to do anything but remand because otherwise we are guessing at the reasons. As you and I sit here and discuss, Your Honor, why he might have found that that 100 grams is relevant conduct was because it came out of the defendant's mouth or not. We are indeed, at this moment, guessing at his factual analysis and guessing at his legal reasoning, and that's the very thing that this Court refused to do recently in the Garrett case, and that's why we would ask that the case be remanded. If there are no other questions now, I'll reserve the remaining time. And you didn't get to the whole issue of the fraud enhancement or the abuse of trust. Is that because there's a concession there, or you just choose to rest on your laurels? I choose to rest on my previous briefing, Your Honor, on that, unless the Court has specific questions. I have one question, and that is, are these sentences consecutive? They are. Is that in record? It is, because in the fraud case, 11 CR 571, we made arguments for concurrent sentencing. I believe the fraud case was sentenced last. Whichever case was sentenced last, we made arguments for concurrent sentencing, and the district court rejected those and said that it was going to give consecutive sentencing. Yes, that is in the record. In the last sentencing hearing that was conducted, which I believe is the fraud sentencing, 11 CR 571. Thank you. All right. Thank you. Ms. Biesenthal, or Biesenthal, which is it? It's Biesenthal. Biesenthal. May it please the Court, Bethany Biesenthal, for the United States. The district court in Rochelle Burnett's drug case did not clearly err in finding the defendant accountable for only 100 grams of heroin. That finding that the district court made was supported not only by the record in the case that was fully developed through a two-week trial, as well as extensive sentencing papers, but was also primarily supported by the defendant's own admissions at trial that he made under oath. But as Mr. Brindley points out, we don't have explicit findings, so how can we be sure the 100 grams really was relevant conduct? Judge, the reason that we can be sure that that 100 grams really was relevant conduct is because of the defendant's own testimony. I think in this situation, to be clear, the judge, the district court, was clear that he could find more than 100 grams. He was making a conservative finding based on the defendant's own admissions. So if we then look to what the defendant actually said, he talked at trial, during his direct examination, talked about the heroin business that he ran, that he operated. Now, he claimed to do that on his own, so there is the issue of whether there was a conspiracy or whether it was his own drug operation, but we don't need to get there. Because what the defendant said at trial was that beginning in early 2009, through his arrest in October 2009, he operated a drug business. For one drug, heroin. He testified that he purchased his heroin primarily from one supplier, Richard Harrington. He testified that he sold that heroin to various individuals, but primarily three, three individuals who were charged along with him. And he testified that beginning in early 2009, when he first started working his heroin business, he would purchase small amounts that increased over time. By July, August, September of 2009, he was purchasing heroin from Richard Harrington once to two times a week, and ultimately he purchased 100 grams from him at one time. Now, the counts of conviction were two sales of heroin during that exact same drug operation, during the exact same heroin business that was run by Mr. Burnett in September of 2009. So they were at the exact same time period that Mr. Burnett testified to running his own drug operation and selling the heroin on a consistent time period through that early 2009 through October 2009. So the district court in this case didn't need to make any express finding about the relevant conduct because the record was so clear. It was so developed through the defendant's own admissions. And again, to be clear, the district court here was making a conservative finding. He specifically said that there were ways to get above the 100 grams, so he didn't necessarily reject what the government had argued. He didn't necessarily reject what the PSR had concluded. What he did was made this finding based only on what the defendant admitted at trial. So he made the most conservative finding that he could. Was the defendant testifying to show that his operation was not part of the conspiracy and he wanted to show that he was independent and this is all he did or something? That's exactly right. That's why he was testifying? Correct. Because that's pretty unusual. Correct. So Mr. Burnett's testimony focused on the fact that, yes, he ran a heroin business, but he did it on his own. He was never fronted drugs from Mr. Harrington, and there was no conspiracy between him and the people who the government had alleged were his workers. He claimed that they were just customers. So the focus of his testimony was not on the fact that he didn't run a heroin business. It was on the fact that he didn't do it with anyone else. He was on his own. So in looking at his testimony, then, it's very clear that we're looking at this one nine-month long heroin business that he ran on his own, according to him, but that included these transactions with Richard Harrington and other customers throughout that nine-month period that included at least one purchase of 100 grams at one time and the counts of conviction that occurred in September 2009. So it was one time period with no interruption, same drug, primarily the same supplier, and primarily all the same customers, which is why there was no reason for the district court to make any further findings on his relevant conduct analysis. And if there are no further questions, then, from the court, the government would request that the court affirm both Mr. Burnett's sentence in the narcotics case as well as in the fraud case. You tried both of those? I'm a little confused about the sequence and two judges and all that. Mr. Burnett, the defendant went to trial on the narcotics case. He pled guilty in the fraud case, which was in front of Judge Canelli. Okay. That's what I was – I'm only curious about those things. I'm not sure how that all happened. And the sentencing hearing in the – to answer your question earlier, the sentencing hearing in the fraud case was first, and the sentencing hearing in the drug case was second. Okay. Which was first? The fraud case. I see. So that 90 days was intact when the 135 was consecutive. That's right. Thank you. Thank you. How much time? Two minutes. Two minutes. The government's argument suggests that all of the conduct that Mr. Burnett has engaged in should count as relevant conduct. Based on the argument just heard, it's all related. It all should count. The district court found that that was not the case. When the government says the district court didn't explicitly reject the government's position, it did. It explicitly sustained objections to the pre-sentence report. It found a different quantity than that suggested, but those were expressly rejected, and as was the position of the defense. And in that situation, there has to be some analysis to tell us why that is. The answer that we are assuming – well, because the defendants testified to 100 grams, that's the quantity. But under a relevant conduct analysis, it doesn't matter who testified to it. It matters whether it bears the necessary relationship. And the government's argument seems to be, to me, that, well, it all bears the necessary relationship, so he just randomly picked this one amount because the defendants said that. But that's not what the district court said, nor would that be a proper analysis. When the district court rejects both of the parties' positions and rejects the calculation of the pre-sentence report, the district court has to give factual and legal analysis telling us what transactions he's talking about and why those transactions bear the necessary relationship. The only way to avoid guessing at the reasons the district court made the decision in terms of facts and legal analysis, as both parties have had to do here with the court, is to remand and let the district court make that clear so the accuracy and adequacy of the court's opinion can be properly considered and determined. Thank you. All right, thank you. We'll take the case under advisement.